**JAIME ALVARDO ZUGUIN, Plaintiff**

**v.**

**M/V CAPTAIN M.J. SOUZA, her Cargo, Freight, Equipment, Engines, Boats, Anchors, Helicopter, Rigging, Tackle, Furniture and All Other Necessaries Appertaining to the Vessel, Defendant in Rem**

**and**

**RALPH FELICIANO and FRANK SOUZA, Defendants in Personam**

High Court of American Samoa
Trial Division

CA No. 80-90

October 7, 1992

Before KRUSE, Chief Justice, TAUANU'U, Chief Associate Judge, MAILO, Associate Judge.

Counsel: For Plaintiff, Robert A. Dennison III
 For Defendants, John L. Ward II

This is a dispute relating to seaman's wages. Defendants Ralph Feliciano and Frank Souza are, respectively, the captain and a part-owner of the tuna vessel M/V Captain Souza, the defendant in rem. Plaintiff, a certified and licensed helicopter mechanic, worked two fishing voyages for the defendants and was compensated to his apparent satisfaction. However, after his third trip, plaintiff was not happy with the compensation figure paid to him for that voyage; he thought he was entitled to much more than that tendered. He walked off the vessel before what would have been his fourth trip (hereinafter "voyage 45"), after failing to persuade Feliciano to reconsider his third-voyage pay or, alternatively, change his wage structure. He subsequently filed suit, alleging breach of contract.

The evidence here includes the respective depositions of plaintiff and Feliciano, offered pursuant to stipulation, as well as the testimony of a Mr. Ray Fowler given on the day of trial. The evidence shows that prior to embarking on his first fishing voyage with the M/V Souza, plaintiff and defendants entered into a compensation agreement as evidenced by a writing styled "Payroll Authorization Form" (hereinafter "the form"). The form is clearly devised to set out the "rate of pay" payable by the vessel to a particular crew member signing on. In plaintiff's case, the form was filled in to stipulate a rate of compensation payable at "U.S. $3000 per month . . . two dollars per ton." The form also provides that compensation is neither payable on the first 100 tons of the catch nor on certain under-sized fish, and it further reflects, by way of a check mark in the space designated, that "airfare" is the responsibility of the vessel.[1]

In his deposition, plaintiff identified the form as his "contract," which he also acknowledged as correctly reflecting his original negotiations over the telephone with Feliciano; he understood Feliciano's telephonic offer to be three thousand dollars per month, two dollars per

_____

[1] According to Feliciano, the layover time involved with the unloading of the catch after each trip would vary from one week to a month, and sometimes up to two months, depending on the cannery. Between voyages, the non-Samoan crew members would usually return home until the vessel was ready to fish again.

ton, plus his return airfare home to Panama. However, plaintiff also claims that when he reported to the vessel and was presented the form for signature, Feliciano had verbally guaranteed him two month's "minimum" pay. As he understood it, he was effectively entitled to a minimum of $6000 per voyage (in addition to tonnage and airfare), even if the fishing trip took less than two months to complete.

Feliciano's position on the wage agreement is that the form also correctly reflected the discussions he had with plaintiff over the telephone. However, he not only denies plaintiff's claimed parol contract, two month's "minimum" salary, but also the discussion of anything "minimum." His understanding of the wage agreement is that plaintiff is entitled to $3000 per month while the vessel is actually *at sea* fishing (together with tonnage and airfare). Feliciano also testified that he was only approached by plaintiff shortly before the vessel was due to sail on voyage 45, to change his contract because the fishing trips were proving "too fast." Plaintiff had asked him for $9 per ton plus airfare, but he had responded with a counter-offer of $7 plus airfare. They could not agree on a tonnage-based figure, and plaintiff thereafter left the vessel without notice.

We find that the terms of the agreement concluded between the parties is that which is contained in the form. We reject the parol variation claimed by plaintiff, the two-month minimum, as being less believable. Among other things, the terms as set out in the form are more consistent with each party's avowed understanding of the compensation agreement arrived at over the telephone. The parol variation would, therefore, be essentially a gratuitous offer on Feliciano's part. We find this to be improbable. (Plaintiff suggests in his deposition that he was perhaps mistaken, because of his limited English, about the extent of Feliciano's telephonic offer; but this is an admission that cuts both ways.) Furthermore, we note that actual performance in the first two voyages seems to bear out the agreement reflected in the form rather than the suggested parol variance. We conclude that the form more accurately reflects the parties' agreement on compensation.

The next point of contention is whether or not the $3000 monthly rate is limited to time "at sea." We hold that the agreement is so limited. The form also provides, albeit stated somewhat awkwardly, that the stipulated rate of compensation, "$3000 per month . . . $2 per ton," is "to be paid an amount of [sic] per month *while the boat is at sea*." (Emphasis added). Thus, the bargain which plaintiff had struck with Feliciano carried the attendant risk of short voyages and slow

9

turnarounds. The first two fishing voyages involved more extended periods of time, each taking roughly two months to complete, while the third took only 25 days. As such, the bargain was necessarily more favorable to the plaintiff during the first two voyages.[2] We conclude no breach of contract on the part of the defendants.

Plaintiff also claims that he is entitled to a return ticket home as provided in his contract and complains that the defendants "had failed and refused to provide [him] with a return air ticket to his country of residence." The difficulty with this claim is that it is premised on either one of two possibilities, neither of which favors plaintiff: 1) a wage agreement which plaintiff himself had reneged on or 2) a non-existent wage agreement because the parties could not agree on the terms of a tonnage-based compensation agreement. The form itself does not contain anything indicating term or duration. In practice, however, the resulting service contract for each particular voyage had recurrently incorporated the compensation agreement evidenced by the form until voyage 45. At that point, plaintiff made it quite clear that he no longer wished to further work on the terms set out in the form. Either way, it would seem to us that plaintiff must necessarily bear the brunt of his own action or inaction after walking off the vessel.

Notwithstanding, the evidence shows that plaintiff, prior to leaving the ship and quite clearly in anticipation of working a fourth trip with the defendants--on terms more to his liking--had worked in port to prepare the vessel's newly-arrived helicopter for the pending voyage 45 and to dismantle the old one for shipment off-island. In the circumstances, we hold that plaintiff is entitled to compensation on a *quantum meruit* basis. We find that plaintiff had worked for about 40 hours on the helicopters. The testimony of Mr. Fowler reveals that the going rate for helicopter-repair services on-island is about $50 an hour,

---

[2] Obviously, a compensation rate tied solely to tonnage, as subsequently sought by plaintiff, would be more favorable to the seaman in circumstances where fishing voyages are of short duration. Such a rate, however, would be unfavorable to him when a fishing trip takes an extended period of time. Illustrative is plaintiff's last voyage with his former employer prior to signing on with the M/V Souza; this trip only netted plaintiff the paltry sum of $555.47, representing four-and-a-half months of fishing and compensation based solely on tonnage at $7.25 per ton. Thus, there is a certain risk-factor attendant with either index.

10

and we so find. Accordingly, plaintiff shall have judgment against the defendant vessel M/V Souza in the amount of $2000.

It is so ordered.